**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────────

ANDREA N.,

                                        Plaintiff,

            v.

                                                        No. 3:18-CV-1186
ANDREW SAUL,                                            (CFH)
Commissioner of Social Security,

                                        Defendant.

────────────────────────────────


**APPEARANCES:**                        **OF COUNSEL:**

Lachman, Gorton Law Firm                PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

Social Security Administration          PETER W. JEWETT, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


### MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff Andrea N.[2] brings this action pursuant to 43 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

──────────────────

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 6.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of
the Judicial Conference of the United States, which was adopted by the Northern District of New York in
2018 to better protect personal and medical information of non-governmental parties, this Report-
Recommendation and Order will identify plaintiff by first name and last initial.

denying her application for supplemental security income ("SSI") benefits.  See Dkt. No. 1 ("Compl.").[3]  Plaintiff moves for a finding of disability or remand for further administrative proceedings, and the Commissioner cross moves for a judgment on the pleadings.  See Dkt. Nos. 9, 10.  Plaintiff filed a reply.  See Dkt. No. 11-1.  For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

Plaintiff was born in 1981, and obtained a G.E.D.  See T. 38, 59.  Plaintiff lives with her two children.  See id. at 38.  Plaintiff last worked in 2009 as a waitress at Denny's until she was "laid off."  Id. at 34.  On November 19, 2014, plaintiff protectively filed a Title XVI application for SSI benefits, alleging a disability onset date of October 1, 2013.  See id. at 159.  Her application was initially denied on January 20, 2015.  See id. at 73.  Plaintiff requested a hearing, and a hearing was held on June 13, 2017 before Administrative Law Judge ("ALJ") Shawn Bozarth.  See id. at 30.  On July 31, 2017, the ALJ issued an unfavorable decision.  See id. at 23.  On July 30, 2018, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner.  See id. at 1.  Plaintiff commenced this action on October 2, 2018.  See Compl.

## II. Discussion

### A. Standard of Review

---

[3] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 6.

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has

4

an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467). "In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since October 14, 2014, plaintiff's amended alleged disability onset date. See T. 13, 45. At step two, the ALJ found that plaintiff had the following severe impairments: cervical and lumbar spine degenerative

disc disease, obesity, migraine headaches, depression, and anxiety. See id. at 13. At

step three, the ALJ determined that plaintiff did not have an impairment or combination

of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at 14. Before

reaching step four, the ALJ concluded that plaintiff retained the residual functional

capacity ("RFC") to

> Perform light work as defined in 20 CFR 416.967(b) except
> that [she] can perform a low stress job, which is a job that
> requires occasional decision-making, occasional judgments,
> and occasional changes in the work setting. [Plaintiff] should
> be limited to low stress jobs that are goal oriented rather
> than oriented toward production pace or on an assembly
> line. [She] should be limited to low stress jobs requiring
> simple, repetitive instructions. In a low stress job, the
> individual should have no more than occasional contact with
> co-workers, supervisors, and the public.

Id. at 17. At step four, the ALJ found that plaintiff was unable to perform any past

relevant work. See id. at 21. At step five, considering plaintiff's age, education, work

experience, and RFC, and the testimony of a vocational expert, the ALJ determined that

there were jobs that existed in significant numbers in the national economy that plaintiff

could perform. See id. at 22. Thus, the ALJ determined that plaintiff had not been

under a disability, as defined in the Social Security Act, since October 14, 2014. See id.

at 23.


### D. Arguments

Plaintiff first argues that the ALJ's RFC determination is not supported by

substantial evidence because it fails to account for plaintiff's limitations regarding work-

pace and attendance. See Dkt. No. 9 at 14. Plaintiff next argues that the ALJ

6

improperly applied the treating physician rule, failed to adequately weigh the medical opinion evidence, and failed to set forth sufficient analysis of her findings.  See id. at 17-23.  Specifically, plaintiff contends that the ALJ failed to give controlling weight to the medical opinions of her treating physicians with respect to her limitations concerning work-pace and attendance.  See id.  Finally, plaintiff argues that the step five determination is not supported by substantial evidence.  See id. at 23-24.  Conversely, the Commissioner argues that the ALJ's RFC is supported by substantial evidence.  See Dkt. No. 10 at 5.  In particular, the Commissioner contends that the ALJ's RFC determination expressly accounts for plaintiff's work-pace and attendance limitations.  See id. at 7.  Further, the Commissioner argues that the ALJ properly applied the treating physician rule, weighed the medical opinion evidence, and provided adequate reasoning.  See id. at 8-15.

### E. The ALJ's RFC Determination

Residual Functional Capacity ("RFC") is defined as "'what an individual can still do despite his or her limitations . . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"  Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-

related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *6). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of Social Security disability. See Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 5:14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted and citations). "An ALJ should consider all medical opinions received regarding the claimant." Reider v. Colvin, No. 15-CV-6517P (MWP), 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (internal quotation marks and citation omitted)); see also SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining that "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record."). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration

8

of the treatment relationship between the source and the claimant.  See 20 C.F.R. § 404.1527(c)(1)-(6).

Plaintiff first argues that the ALJ's RFC failed to account for her limitations concerning work-pace and attendance because there is "undisputed medical opinion evidence (supported by the medical record evidence) that [p]laintiff has limitations to work-pace and/or attendance."  Dkt. No. 9 at 11.  In particular, plaintiff contends that the record establishes that she has more than moderate limitations in maintaining work-pace and a regular schedule.  See id. at 12-16.  The Court disagrees .

As an initial matter, the RFC expressly states that "[plaintiff] should be limited to low stress jobs that are goal oriented rather than oriented toward production pace or an assembly line," "limited to low stress jobs requiring simple, repetitive instructions" and "should have no more than occasional contact with co-workers, supervisors, and the public."  T. 17 (emphasis added); Dkt. No. 10 at 7-8.  As discussed in detail below, the ALJ properly concluded that plaintiff's ability to concentrate is, at most, only moderately limited; consequently, to the extent that plaintiff argues the ALJ's RFC determination failed to account for her work-pace limitations, her contention is belied by the express language of the RFC.  See, e.g., Eby v. Colvin, 227 F. Supp. 3d 275, 279-80 (W.D.N.Y. 2017) ("The RFC determined by the ALJ, which limits [the] plaintiff to performing low-stress, goal-oriented work[—] and not production pace work[—]involving only simple tasks, adequately accounts for [the] plaintiff's moderate limitations in attention and concentration.").

The Court further finds that plaintiff's contention that the RFC fails to account for her limitations with maintaining a regular work schedule lacks merit.  See Dkt. No. 9 at

9

12.  Plaintiff observes that Dr. Denzien, Dr. Moore, and Dr. Reddy opined that she would have limitations maintaining concentration, work-pace, and a regular work schedule.  See Dkt. No. 9 at 11-17.  In particular, plaintiff points to the portion of Dr. Moore's medical source statement in which she opined that plaintiff had a "[m]oderate to marked limitation in regard[] to . . . maintaining a work regular schedule," and argues that the ALJ erred in rejecting this portion of her opinion without giving "any good reasons for refusing to adopt [her] limitations in this regard."  T. 346 (emphasis added); Dkt. No. 9 at 15.  In general, "the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony."  Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (internal quotation marks and citations omitted).  In this regard, there is no "absolute bar to crediting only portions of medical source opinions." Younes v. Colvin, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015).  However, when an ALJ adopts only portions of a medical opinion in formulating a claimant's RFC, he or she "must explain his or her decision to reject the remaining portions."  Raymer v. Colvin, No. 14-CV-6009P (MWP), 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015).

"The ability to maintain a regular schedule falls under the category of concentration and persistence."  Lowry v. Comm'r of Soc. Sec., No. 1:15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017) (citation omitted), report and recommendation adopted, No. 1:15-CV-1553 (GTS/WBC), 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017).  Courts have observed that "[t]here is significant case law indicating that the ALJ's limitation of [a p]laintiff to 'simple, routine tasks' and 'working primarily alone, with only occasional supervision' accounts for [his or] her limitations for

10

performing activities within a schedule and maintaining regular attendance." Shannon v. Berryhill, No. 6:15-CV-06796, 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018) (collecting cases).  Indeed, the Second Circuit has held that a moderate limitation in the area of concentration, persistence, or pace would not necessarily preclude the ability to perform unskilled work.  See Matta v. Astrue, 508 F. App'x. 53, 55 (2d Cir. 2013) (summary order) ("[t]he ALJ found that [the] plaintiff had moderate difficulties in concentration, persistence and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.") (internal quotation marks and citation omitted)); see also Whipple v. Astrue, 479 F. App'x 367, 370 (2d Cir. 2012) (summary order) (concluding that the consultative examiners' findings that the plaintiff's depression and anxiety caused moderate limitations in social functioning ultimately supported the ALJ's determination that the plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).

Here, the ALJ gave Dr. Moore's opinion "considerable weight . . . except as to the [portion indicating a] moderate to marked limitation on maintaining a regular schedule." T. 20 (emphasis added).  Review of the ALJ's decision reveals that, although not as detailed as would have been preferred, it does explain her reasoning for rejecting the portion of Dr. Moore's report that suggested more than moderate limitations concerning plaintiff's ability to maintain a regular schedule, and is supported by substantial evidence.  See id.  In affording "considerable weight" to Dr. Moore's opinion, except the portion that assessed a "moderate to marked limitation on maintaining a regular schedule," the ALJ specifically determined that "Dr. Moore's assessment [wa]s generally

consistent with her own examination of [plaintiff] showing . . . intact concentration and attention, intact cognitive process[,] and an euthymic mood." Id. at 20-21. Indeed, Dr. Moore opined that plaintiff exhibited "no limitation in . . . maintaining attention and concentration." Id. at 346. The ALJ also observed that "[t]he other mental status examination of record was . . . quite benign." Id. at 21. The mental status examination referenced by the ALJ indicated that plaintiff had good concentration, unimpaired memory, clear thought, oriented x4, maintained good eye contact, and had fair insight. See id. 662-63. Moreover, the ALJ cited Dr. Reddy's opinion that plaintiff had "no more than moderate limitations on mental functioning" and could "perform simple, unskilled work . . . with limited access to the public or other people," which she concluded was "consistent with a preponderance of the medical evidence of record, including the mental status examinations." Id. Indeed, Dr. Reddy's opinion also stated that plaintiff was only "[m]oderately limited" in her "ability to . . . maintain regular attendance[] and be punctual within customary tolerances." T. 69.

    In addition, substantial evidence supports the ALJ's conclusion that plaintiff did not have a significant limitation in maintaining regular attendance. For instance, Dr. Alwan indicated that plaintiff was "compliant" with "appointments." T. 559. Further, plaintiff's April 2017 mental status report noted that "[plaintiff] did have a significant lapse in sessions between her first and second intake appointments due to multiple medical concerns, but has kept regular appointments since that time." Id. at 663. Although Dr. Denzien observed that in plaintiff's 2015 Broome County Department of Social Services forms plaintiff had been noncompliant with her appointment schedule, which plaintiff posits is "indicative of her inability to maintain a schedule," Dkt. No. 9 at

12

15, the ALJ was "entitled to separately weigh each of the available opinions, and to adopt only those portions of the opinions which were consistent with, and/or supported by, the other evidence of record." Burkey v. Colvin, 284 F. Supp. 3d 420, 424 (W.D.N.Y. 2018). In any event, plaintiff's treatment notes from Lourdes between 2013 and 2016 are devoid of any indication that plaintiff missed appointments. See generally T. 237-305, 415-558. Thus, the ALJ's decision to discredit the portion of Dr. Moore's opinion ascribing more than a moderate limitation in maintaining a regular schedule is supported by substantial evidence.

Moreover, for the reasons discussed below in subsection II.F., infra, the ALJ properly rejected Dr. Denzien's significant limitations concerning plaintiff's ability to maintain a regular work schedule, and observed that Dr. Alwan failed to provide any specific limitations in this regard. Accordingly, because the record evidence establishes that plaintiff has, at most, a moderate limitation in maintaining a regular work schedule and work-pace and the RFC specifically limits plaintiff to light work that involves only simple, routine tasks with minimal contact with coworkers, supervisors, or the public, the RFC adequately "accounts for [plaintiff's] limitations for performing activities within a schedule and maintaining regular attendance." Shannon, 2018 WL 6592181, at *3; see Matta, 508 F. App'x at 55; Whipple, 479 F. App'x at 370. Finally, although plaintiff correctly points out that the vocational expert testified that a person that was off task 10% or more of a workday and missed more than one day per month was unemployable, nothing in the record quantifies this level of limitation for plaintiff. See Dkt. No. 9 at 17; T. 57. Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

13

### F. ALJ's Analysis of the Treating Physicians' Opinion Evidence

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2); id. § 416.927(c)(2); see also Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000) (stating that the "treating physician rule . . . mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence."). "This rule applies equally to retrospective opinions given by treating physicians." Jill D. v. Berryhill, 5:17-CV-1308 (CFH), 2019 WL 936523, at *3 (N.D.N.Y. Feb. 26, 2019) (internal quotation marks and citation omitted).

Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 503, 505 (2d Cir. 1998); see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Examples of "good reasons" to discount the opinions of a treating source include the following: the opinions are "inconsistent with the other substantial evidence in the record, such as the opinions of other medical experts," Williams v. Comm'r of Soc. Sec., 236 F. App'x 641, 643-44 (2d Cir. 2007) (summary order) (internal quotation marks and citation omitted); the opinions are "internally

inconsistent," <u>Micheli v. Astrue</u>, 501 F. App'x 26, 28 (2d Cir. 2012) (summary order); the physician's relationship to the claimant is "limited and remote," <u>Petrie v. Astrue</u>, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) (internal quotation marks omitted); or the treating source lacked underlying expertise and gave only brief, conclusory opinions unsupported by clinical findings or other evidence.  <u>See</u> 20 C.F.R. § 404.1527(c)(3), (5). When a treating physician's opinion is not given controlling weight, the ALJ is required to assess the following factors to determine the weight to be given to the medical opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." <u>Schaal</u>, 134 F.3d at 503; <u>see</u> 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.197(c)(2)-(6).

Here, the ALJ's decision to afford "little weight" to the opinion of Dr. Denzien, plaintiff's treating primary care physician, is supported by substantial evidence.  T. 19. Dr. Denzien opined that the "pain and/or side effects of medications" relating to plaintiff's conditions of low back pain, anxiety, vertigo,[4] and migraines would diminish plaintiff's concentration and work-pace, cause plaintiff to require rest at work, be "off task" "[m]ore than 33% of the [work] day," "produce good days and bad days," and cause plaintiff to be absent from work "[m]ore than 4 days per month."  <u>Id.</u> at 706, 707. In affording Dr. Denzine's opinion "little weight," the ALJ concluded that "Dr. [Denzien's] examinations and those of her associates at Lourdes Center for Family Health

---

[4]  Plaintiff does not controvert the ALJ's determination that she failed to establish vertigo as a medically-determinable impairment.  <u>See</u> T. 13; Dkt. No. 9.

("Lourdes") do not substantiate this level of mental and physical disability." Id. at 19 (emphasis added).[5]

At the outset, the Court finds that, to the extent that Dr. Denzien's opinion is based on medication side effects, it is unsupported by substantial evidence. See T. 19. The only record evidence of plaintiff being hospitalized for a drug reaction was in March 2014 when she checked into a hospital for feeling "dizzy" and "faint[] post-cocaine use." Id. at 271. The remaining assertions concerning adverse drug reactions contained in the record appear to be based solely on plaintiff's subjective complaints, which the ALJ correctly declined to credit. See id. at 18; see also Burkey, 284 F. Supp. 3d at 425 (holding that "to the extent that the ALJ rejected portions of the examining physicians' opinions which were transparently based on some of plaintiff's self-reported diagnoses and symptoms, the ALJ's decision to give short shrift to those portions was particularly appropriate."). For example, plaintiff's testimony that she was "super sensitive" to medications, that she was "bedridden for a month," passed out, and hospitalized as a result of drug reactions, or that she "ha[s] side effects of everything," is unsupported by the record evidence, as the record establishes only that plaintiff has unilaterally stopped taking medications because she did not like the way she felt—often without consulting her prescribing physician. Id. at 35, 44; see id. at 436, 695, 697. In addition, as the ALJ observed, plaintiff indicated positive responses to Imitrex, Advil, and Benadryl for treating her migraines. See id. at 692, 695, 697, 700. Moreover, plaintiff's medical records are inconsistent with her hearing testimony concerning the effects of medications to her treating physicians. Compare id. at 441 (Lourdes treatment note

---

[5] Thus, to the extent that plaintiff contends that the ALJ's analysis in this regard rests solely on plaintiff's mental limitations, she is mistaken. See Dkt. No. 9 at 14.

dated July 14, 2016, indicating that plaintiff "[s]tate[d] Zoloft worked in past, would like to try again), with id. at 44 (Plaintiff's hearing testimony in which she stated that when she took Zoloft, she "was bedridden for a month. [She] was urinating in a garbage can, [and] had to have help to walk.").

Further, the ALJ correctly found that the substantial limitations that Dr. Denzien set forth were inconsistent with her own treatment records and other medical evidence of record. See T. 19. "An ALJ may properly reject a treating physician's opinion where it is unsupported by medical evidence in the record." Scitney v. Colvin, 41 F. Supp. 3d 289, 302 (W.D.N.Y. 2014). Concerning plaintiff's anxiety, although plaintiff presented as anxious and exhibited pressured speech during a few of her visits over the course of approximately three years of treatment at Lourdes, her treatment notes largely indicated that she had "[n]ormal" "[j]udgment and insight"; "normal" speech; "normal" "[t]hought [p]rocess"; and "no deficiency" of "[e]valuation of [a]ssociations," and any anxiousness or depression was not recorded as carrying over to subsequent examinations. Id. at 417, 418; see id. at 239, 249, 258, 422, 433, 438, ,444, 455, 459, 462, 463, 467, 470, 475, 478, 479, 482, 483, 487, 489, 492, 493, 496. Indeed, plaintiff reported to Dr. Denzien in September 15, 2016, that, although "her anxiety [wa]s still problematic[, it was] not as bad." Id. at 436. Moreover, as the ALJ observed, the majority of Dr. Denzien's treatment notes and those of her associates at Lourdes indicated that plaintiff appeared to be in "[n]o acute distress." See, e.g., T. 417-18. In any event, with respect to plaintiff's anxiety, the ALJ gave "some weight" Dr. Moore's opinion regarding plaintiff's "stress limitation . . . as well as [plaintiff's] representation that she does not like

17

crowds," T. 21, and specifically accounted for such limitations in plaintiff's RFC by limiting her to low stress work with minimal contact with others. See id. at 17.

Moreover, Dr. Denzien's opinion concerning plaintiff's limitations to remain on task and concentrate are inconsistent with the clinical findings and opinions of other practitioners. For example, Henda Bouali, MD, plaintiff's rheumatologist, indicated that plaintiff presented with a "normal" "[l]evel of consciousness," "[o]rientation," and "[m]emory." T. 330. In addition, Dr. Moore's mental status examination indicated that plaintiff demonstrated a "coherent and goal directed" thought process, "x3" orientation, "[g]enerally intact" attention and concentration, an "[a]verage range" of cognitive functioning," "fair" insight and judgment. Id. at 345, 346. Indeed, as mentioned above, plaintiff's April 2017 mental status examination indicated that plaintiff had good concentration, unimpaired memory, clear thought, oriented x4, maintained good eye contact, and had fair insight. See id. at 662-63. Dr. Denzien's opinion is also inconsistent with the findings of Dr. Alwan, plaintiff's treating neurologist. See id. at 516, 517 ("Mental Status: Alert and oriented x3. No aphasia or dysphasia on language and speech testing. Recent and remote memory is intact to conversation."). Thus, the weight the ALJ gave to Dr. Denzien's opinion concerning the significance of plaintiff's mental limitations was appropriate, as her opinion was inconsistent with and unsupported by other substantial evidence in the record. T. 19; See, e.g., Williams v. Comm'r of Soc. Sec., 236 F. App'x 641, 643-44 (2d Cir. 2007) (summary order) ("[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the

18

record, such as the opinions of other medical experts." (internal quotation marks and citation omitted)).

The ALJ's determination to discredit the significant limitations proffered in Dr. Denzien's opinion concerning plaintiff's physical limitations is also supported by substantial evidence. See T. 19. Although it is undisputed that an MRI indicated that, as far back as 2010, plaintiff has had a herniated disc in her lumbar spine, subsequent musculoskeletal examinations—since the alleged disability onset date—do not indicate that plaintiff suffers significant physical limitations as a result thereof. See id. at 507. For instance, the musculoskeletal examinations conducted by Dr. Denzien and her associates at Lourdes indicated that plaintiff presented with "[n]ormal" "[g]ait and station," and did not test for strength or indicate that plaintiff required to change positions to address pain. See e.g., id. at 417; see id. at 19. Further, Dr. Alwan observed that plaintiff exhibited "[n]o gross limb weakness," [d]eep tendon reflexes are symmetric," and that plaintiff's "gait is within normal limits." Id. at 516, 518. Moreover, Dr. Jenouri observed that plaintiff had "5/5" "[s]trength in the upper and lower extremities," "no muscle atrophy," full range of motion in her cervical spine, no scoliosis, kyphosis, or abnormality in thorac spine, and that "plaintiff's "[l]umbar spine show[ed] flextion 60 degrees, extension 20 degrees, lateral flexion of 25 degrees and right 25 degrees. SLR right 45 degrees positive and left 45 degrees positive, both confirmed seated." Id. at 339. Therefore, Dr. Jenouri concluded, plaintiff would have "[m]ild restriction walking, standing, and sitting long periods, bending, stair climbing, lifting, and carrying." Id. at 339, 340. Thus, the ALJ properly examined the consistency of Dr. Denzien's opinion with the record as a whole and reasonably determined that it was

unsupported by substantial evidence because it was inconsistent with treatment notes, diagnostic testing, and other medical opinion evidence. See Sinda v. Comm'r of Social Sec., No. 6:00-CV-0558 (GLS), 2004 WL 1305882, at *10 (N.D.N.Y. June 4, 2004) ("[W]here the medical evidence of record includes medical source opinions that are inconsistent with other evidence . . . , the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence." (citation omitted)).

The ALJ also properly rejected the Dr. Denzien's opinion insofar as she indicated that plaintiff would have significant limitations due to her migraine headaches. See T. 19. As the ALJ observed, "the clinical findings from other practitioners, including [Dr. Paige and Dr. Alwan], . . . document largely benign physical examinations without significant sedation, attention[,] or cognitive problems." Id. Indeed, Dr. Alwan's notes indicate that plaintiff "has had multiple ENT evaluations, physical therapy with vestibular exercises, meclizine, and a VNG" for her headaches, "all of which were reportedly unremarkable." Id. at 515. Further, Dr. Awlan observed that plaintiff "continue[s] to use the Imitrex and that does work for her," and that plaintiff indicated Advil and Benadryl provided also provided some relief for her migraine headaches. Id. at 515; see id. at 534, 692, 695, 697, 700. Gary Paige, MD, PhD, plaintiff's rheumatologist, indicated that plaintiff "ha[d] rather classic and frequent migraine headaches," which he noted were "not uncommon attributes" and that "[t]here is no evidence of destructive vestibulopathy." Id. at 520. Thus, the medical evidence of record does not support the significant limitations set forth in Dr. Denzien's opinion—for which she provides no basis—and are unsupported by any treatment notes or diagnostic testing and are inconsistent with the opinions of the other medical experts; therefore, the ALJ

appropriately declined to credit Dr. Denzien's opinion in this regard. See Williams, 236 F. App'x at 643-44; see also Ruth M. v. Saul, No. 5:18-CV-01006 (FJS/CFH), 2020 WL 819323, at *6 (N.D.N.Y. Feb. 19, 2020) (holding that the ALJ properly declined to give controlling weight to a treating physician's opinions that the plaintiff's physical limitations would cause her to be off task for 30% of the workday or miss more than four days per month where the treating physician "provide[d] no basis for th[o]se opinions," which were "inconsistent with the opinions of [other medical professionals].").

Moreover, the ALJ properly determined that Dr. Alwan's opinion was not entitled to controlling weight. See T. 20. Plaintiff visited Dr. Alwan for the sole purpose of obtaining treatment for her migraines. See id. at 560. However, Dr. Alwan's medical source statement did not provide any limitations based on plaintiff's migraines, see id.; instead, he wrote "unknown" with respect to the amount of time the pain and/or medication side effects relating to her migraines would cause her to be off task or absent from work. Id. Therefore, as Dr. Alwan's medical source statement provides no opinion upon which the ALJ could have relied to determine the extent, if any, of plaintiff's work-related limitations caused by her migraine headaches, the ALJ properly gave this opinion "little weight." Id. at 20; see Pidkaminy v. Astrue, 919 F. Supp. 2d 237, 246 (N.D.N.Y. 2013) (holding that the ALJ properly afforded little weight to a physician's opinion which "did not provide any opinion as to [the p]laintiff's functional limitations" or "give any opinion regarding [the p]laintiff's functional capacities."). In any event, Dr. Alwan's opinions that the pain from plaintiff's migraines and/or medication side effects would cause her to have diminished work-pace and concentration is belied by the medical evidence of record. See subsection II.E.1., supra., at 16.

21

## G. Step Five Determination

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at step five "'to show there is other work that [the claimant] can perform.'" McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." Id. at 151 (internal quotation marks and citations omitted). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Pardee, 631 F. Supp. 2d at 211.

The Court finds that the ALJ's finding that plaintiff was capable of performing a significant number of jobs in the national economy is supported by substantial evidence in the record. See T. 22. As stated above, the ALJ properly determined plaintiff's RFC, and substantial evidence in the record supports that finding. See subsection II.E., supra. Because the ALJ posed a hypothetical based on that RFC, and the jobs that the vocational expert set forth all constitute light, unskilled work with the limitations set forth in the RFC, the Court finds that the step five determination is supported by substantial evidence. See id. Moreover, as discussed above, to the extent plaintiff relies on the portion of the ALJ's hypothetical describing a person who is off task more than 10% of

the workday and absent more than one day per month, the record does not establish that plaintiff has such significant limitations.  <u>See</u> subsection II. E., <u>supra</u>.  The Court has considered plaintiff's remaining contentions, including those advanced in her reply brief, and finds them unpersuasive.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Andrea N.'s motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: March 9, 2020
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge